**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ERIN WEILER, on behalf of herself and others similarly situated, | : : : | CASE NO. |
| Plaintiff, | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| STAPLES, INC., a Delaware corporation. | : : : | |
| Defendant. | : : : / | |

**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REQUESTED**

**DEMAND FOR A JURY TRIAL**

Plaintiff, ERIN WEILER ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant, STAPLES, INC. ("Defendant" or "Staples") for breach of contract, unjust enrichment, conversion, and fraud. On personal knowledge, investigation of counsel, and on information and belief, Plaintiff alleges as follows:

**NATURE OF ACTION**

1.      Ecommerce is a multi-trillion-dollar global business.  Competition is incredibly fierce, and companies use every tool at their disposal to increase market share.  Some companies, seeing many former brick and mortar giants decimated by the ecommerce revolution, have gone a step too far in their attempts to carve off a piece of the online marketplace from behemoths like Amazon and eBay.  Staples is one such example.  In trying to stay relevant, they have resorted to the oldest trick in the book: bait and switch.

2.      Staples uses a systematic "bait and switch" scheme through its online AutoRestock program.  Staples "baits" customers by promising significant discounts of up to 25% off the

purchase price of most products if customers agree for those products to be automatically shipped in the future, only to tack on an undisclosed $9.95 shipping fee on all items under $25.00.  The scheme and deception are intentional, designed to entice customers away from competitors that properly disclose applicable shipping fees or have free shipping on eligible items.  The checkout process has been designed so that customers see one (low) price before and *during* checkout, but are automatically billed a higher price that includes a $9.95 shipping fee, even though the potential for the shipping fee is not disclosed at any point prior to the completion of the transaction.

3.     Thousands, if not millions, of Staples customers have been lied to and effectively stolen from: they were told they would be charged one low price for a product, but were surprised to later learn that they were in fact charged a higher price after the transaction had closed.

4.     Plaintiff brings this action on behalf of herself, the nationwide Class, and the California subclass for breach of contract, unjust enrichment, conversion, and fraud.

## PARTIES

5.     Plaintiff is an individual residing in Los Angeles, California.  On June 22, 2024, Plaintiff purchased Staples Heavy Duty Shipping Packing Tape on Staples' website.  She purchased the product using her credit card through Staples' AutoRestock feature on its website.  She used the AutoRestock feature because she thought she would receive a discount off the normal posted price for the product, as was clearly advertised on the website.  Prior to and during checkout, Staples' website stated that the product would cost $6.56 ($5.99 plus $0.57 in tax).  Accordingly, Plaintiff relied on Staples' clear and unambiguous representation that she would be charged $6.56 for the product.  That price became the basis of the bargain between Plaintiff and Staples, in that Plaintiff would not have purchased the product on the same terms (or would not have purchased it at all) if she knew that the represented sales price was not accurate.  Staples

did not disclose at any point before or during the checkout process to Plaintiff that she would be charged an additional $9.95 shipping fee.  Plaintiff would not have purchased the product, or would have not have willingly spent as much money, had she known that Staples would in fact charge her $16.51 for the product, which is *251.67 percent higher than advertised*.  Accordingly, Plaintiff did not receive the benefit of the bargain.

6.      Plaintiff regularly shops for products online.  Plaintiff would consider making purchases through Staples' AutoRestock feature again if the shipping price was actually disclosed before and during the checkout process, and would certainly do so if Staples stopped charging the shipping fee entirely.  However, if Staples decides to continue the same AutoRestock process as in use now, Plaintiff would have no way to know whether a shipping charge would be added before or during the checkout process without a requirement that Defendant stop charging shipping fees.  In short, Plaintiff is unable to rely on Staples' representations regarding pricing through its AutoRestock program in the future, and thus will not be able to use it absent an injunction.

7.      Defendant is a for-profit corporation organized under the laws of Delaware with a principal place of business and headquarters located at 500 Staples Drive, Framingham, Massachusetts 01702.  Defendant's challenged practices at issue here were conceived, reviewed, approved, and otherwise controlled from Defendant's Massachusetts' headquarters.  All critical decisions regarding Defendant's conduct at issue herein were made in Massachusetts.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Class

are in excess of $5,000,000, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed Class, are citizens of states different from the state of Defendant.

9.     This Court has general jurisdiction over Defendant because its principal place of business is in this District.

10.     This Court has specific jurisdiction over Defendant because Defendant operates its website and made all critical decisions, as alleged herein, from its headquarters located within this District.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and is subject to the Court's personal jurisdiction with respect to this action. Venue is also proper because Defendant's Terms and Conditions on its website mandate that all actions concerning the claims at issue here be brought in federal courts of Massachusetts.

## FACTUAL ALLEGATIONS

### A.     Ecommerce Revolution

12.     Ecommerce is a massive, multi-trillion-dollar business.  The online marketplace revolution has left many brick and mortar giants as victims in its wake that could not transition to an online-forward business model.  Former household names like Bed Bad and Beyond could not compete with the product variety, or the pricing and convenience, of Amazon and other online retailers.  Others, like Best Buy and Target, are hanging on by switching to hybrid models, where large percentages of customers order items online and pick them up in person.

13.     Staples, built on the traditional brick and mortar model, has been no exception and struggled to remain relevant within the online marketplace.  For instance, in 2014, as Amazon was really picking up steam, Staples shut down 225 stores in large part because it was losing out to its online competitors.  Customers increasingly started using physical stores like Staples for a practice

called "showrooming," in which they went into brick and mortar stores to look at products, but then ordered them cheaper online.  Over the past decade, Staples has consistently invested significant resources to ensure it stayed relevant within the ecommerce space.

      **B**.     **Attracting And Retaining Customers Online**

     14.    Companies vying in the online marketplace have two major hoops to jump through before completing a sale.  First, they must attract a customer to their website – which is largely accomplished through advertising.  Second, once a putative customer lands on the company's website, they must ensure that customers *complete* the checkout process and do not abandon their digital shopping carts.  This case focuses on this second, critical stage.

     15.    Dozens of studies have been conducted regarding rates of customers abandoning ecommerce websites without purchasing anything, even after placing an item in an online "cart." It is estimated that roughly 70 percent of online shopping carts are abandoned, meaning that customers select an item for purchase but do not complete the transaction more often than not when shopping online.[1]

     16.    Studies show that *the most* common reason online shoppers abandon their cart is because of additional costs like shipping, taxes, and fees that are not disclosed until late in the checkout process.[2]  Almost half (47%) of online shoppers in a recent study reported that extra fees, such as shipping and taxes, will prevent them from moving forward with their purchase during the checkout process.[3]  Relatedly, 18% abandoned carts because the checkout process was too long or complicated, and 17% abandoned carts because they could not see or calculate the total order cost up front.[4]  Routinely, customers report that unexpected shipping fees are the biggest reason for not

---

[1] https://www.shopify.com/blog/shopping-cart-abandonment
[2] https://www.forbes.com/advisor/business/ecommerce-statistics/#sources_section
[3] *Id*.
[4] https://www.shopify.com/blog/shopping-cart-abandonment

going through with an anticipated order.  It has become relatively common for some companies, like Amazon, to waive shipping fees as a way to attract online commerce.  Hence, a reasonable consumer would not assume that shipping fees would be charged absent disclosure of that fact.

      **C.**    **Staples Scheme To Trick Customers Into Completing Online Purchases**

     17.    As a multi-billion-dollar corporation competing in ecommerce, Staples surely knows that shipping fees are the most common reason that customers do not follow through on a transaction.  Staples' "solution" to that problem, however, was not to offer better products, or a better service, but to completely hide the fact that it charges shipping fees on its AutoRestock orders before or at any point *during* the checkout process.  In effect, Staples eliminated the number one reason that customers could potentially abandon their shopping carts on Staples' website by not disclosing shipping fees until the transaction has *closed*, and even then only covertly.

     18.    Below, Plaintiff provides an example of the process, from beginning to end, of an order using AutoRestock on Staples' website.  The process appears to be identical for all of the thousands of products available to purchase through AutoRestock, and the specific product used below is displayed for illustration purposes only.

     19.    **Step 1:** a customer clicks on a product offered on Staples' website.  In this example, a canister of Folgers Classic Roast Ground Coffee is used.  As can be seen on the right-hand side of the image below (encircled), once a product is selected, a customer is presented three choices for how the product can be purchased: Delivery, 1-Hour pick up, or AutoRestock.  The AutoRestock option typically has a lower price than the Delivery or 1-Hour pick up options (up to 25% off), making it more enticing than the other two options.



20.   **Step 2:** The customer clicks on the AutoRestock button, which highlights that option.  When the customer selects the AutoRestock button, the displayed price changes to the price associated with the AutoRestock option.  So, in this example, the price dropped from $10.18 in the above screen under the Delivery option, to $7.63 for the AutoRestock option.  There is no disclosure anywhere on the screen about the potential for being charged an additional shipping fee.



21.    **Step 3:**  The customer clicks the "Set up AutoRestock" button in the above screen. When the customer clicks that button, the website prompts customers to either log in to their existing account (if not already logged in at this point), or to create an account.  When signing in, or creating an account, the website states that customers agree to Staples Easy Rewards Terms and Conditions, which will be discussed further below.



22.    **Step 4:**  Once an account is created, or the user logs in (or if they had already

been logged in at this point), they are taken to the below screen.  The screen allows customers to

select when they would like their first delivery, and select the frequency of deliveries.  The

screen displays their shipping address and credit card on file.  It asks customers to check a box

stating "I understand that the selected payment method will be automatically charged for this

subscription."  Notably, the price displayed in this example is $9.67, two dollars more than the

$7.63 displayed on the initial screen, without any explanation for why more than two dollars were added to the price of the product during the checkout process. This itself is deceptive: advertising a low price, only to display a higher price for that same item just a few clicks later during the checkout process. Again, there is no disclosure of any kind about the possibility of being charged a shipping fee.



23. **Step 5:** The customer clicks "Set up AutoRestock" on the above screen. Once clicked, Staples charges their credit card, and displays the below screen. The screen prominently displays a green check mark, signifying the completion of the checkout process, along with the

words "**Congratulations!!** Your AutoRestock subscription has been created" (bolding in original). The customer can then exit the website, as the transaction has been completed, continue shopping, or, if they wish, click on View Subscription.   Clicking View Subscription is not necessary to complete the transaction, as by this point the transaction is finished.



24.     As can be seen above, customers are not once put on notice about the possibility of being charged a shipping fee at any point prior to fully completing the transaction and their credit card being charged.   In the above example, however, Staples added a $9.95 shipping fee.   The

presence of that fee would only be visible if a customer clicked on "View Subscription," which, as described above, is not necessary to complete the transaction. The fee would also of course be visible on a customer's credit card statement, but only as a reflection of the fact that Staples charged a customer's credit card $9.95 more than disclosed. Staples also discloses the fee in confirmation emails sent to customers *after* online orders have been processed. But again, Staples does not once disclose the fee before the transaction is complete and a customer's credit card has been charged. Most customers *never find out about the shipping fee*, as they click out of the screen at the end of the transaction (without clicking on View Subscription), are not extremely diligent auditing their credit card statements, and do not routinely check online order confirmation emails.

25.     Staples has a webpage on its website dedicated to its AutoRestock program.[5] The webpage explains the AutoRestock program, and allows customers to shop exclusively for products within the AutoRestock program.[6] The potential, or amount, of shipping fees is not disclosed anywhere on this webpage. The webpage even has a "Frequently asked questions" portion. None of the questions or answers mention shipping fees.

26.     Staples' website also has a "Help Center" portion, with a page dedicated to the AutoRestock program.[7] This page goes into greater depth about how the program works. This page states that the site's "terms and conditions below … apply to your AutoRestock purchases from this site." The webpage specifies that for customers' "first order, you will be charged immediately. After your first order, you will be charged when your order is shipped." Like the other webpages discussed, nowhere on this dedicated Help Center AutoRestock webpage does Staples disclose even the possibility that it may charge shipping fees on AutoRestock orders. If

---

[5] https://www.staples.com/hc?id=519b897b-2ef7-461a-ab1c-7d36ec056287
[6] https://www.staples.com/deals/Auto-Restock/BI1498644
[7] https://www.staples.com/hc?id=519b897b-2ef7-461a-ab1c-7d36ec056287

anything, the language on this page suggests that shipping fees will *not* be charged.  The webpage states, "The price of your first order is confirmed upon subscribing.  For subsequent orders, the price will be the then-current cost of the item at the time of shipment plus any sales tax."  So, while sales tax is mentioned as an additional fee, shipping fees are conspicuously absent.  And, the price that is "confirmed upon subscribing" does not include the shipping fee.

27.     The shipping fees are also extremely difficult to avoid even for those customers that do discover them after completing the transaction.  For instance, once Plaintiff discovered that her credit card had been billed $9.95 more than anticipated, she tried to cancel the transaction.  After discovering the unexpected $9.95 shipping fee, Plaintiff intended to buy the same product purchased from Amazon, where she could get *free* shipping.  Plaintiff tried to cancel the transaction on Staples' website just two days after ordering the product, but was unsuccessful as the product had already shipped.

### D.     Staples Online Terms and Conditions

28.     Staples' website has two sets of terms and conditions.  First, Staples has its general "Terms and Conditions."[8] These terms and conditions do not disclose the potential for shipping fees.  The Terms and Conditions do, however, contain a choice of law and forum selection provision requiring the application of Massachusetts law and requiring that any suit "related to the Site" be brought in state or federal courts in Massachusetts:

> These T&C will be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, as it is applied to agreements entered into and performed therein, and excluding:  (i) the United Nations Convention on Contracts for the International Sale of Goods; (ii) the 1974 Convention on the Limitation Period in the International Sale of Goods; and (iii) the Protocol amending the 1974 Convention, done at Vienna April 11, 1980. Any action brought to enforce these T&C or matters related to the Site will be brought in either the State or Federal Courts of the Commonwealth

---

[8] https://www.staples.com/hc?id=52e40651-0852-4ad7-a532-45017c287d50

> of Massachusetts; provided, however, that notwithstanding anything contained in these T&C to the contrary, Staples shall have the right to institute judicial proceedings against you or anyone acting by, through or under you, in order to enforce Staples' rights hereunder through reformation of contract, specific performance, injunction or similar equitable relief.

29.     Staples' website also has a separate page titled "Staples Easy Rewards Terms & Conditions," which customers were required to assent to when creating an account on the website, as discussed above.[9]  Again, nothing in these terms discloses that shipping fees will be added to AutoRestock orders.  Like the general Terms & Conditions discussed above, the Staples Easy Rewards Terms & Conditions contain a Massachusetts choice of law and forum selection clause, stating:

> These Terms are governed by the laws of the Commonwealth of Massachusetts, without regard to its conflict of laws rules. Any Member's legal action against Staples relating to the Program may only be filed in the state and federal courts of Suffolk County, Massachusetts.

## CLASS ACTION ALLEGATIONS

30.     As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(3), Plaintiff brings this action on behalf of the following "Class":  All persons in the United States who were charged or paid a shipping fee by Staples after ordering an item through Staples' AutoRestock program on Staples' website.

31.     Plaintiff also seeks to represent a subclass defined as all members of the Class who placed the relevant order to be shipped to a California address and resided in California at the time of the order (the "California Subclass" or "Subclass").

---

[9] https://www.staples.com/hc?id=64ec8cbd-3138-4507-afbb-05ff52762977

32.     Plaintiff reserves the right to amend or modify the Class and Subclass definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of the Court warrant.

33.     Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

34.     Plaintiff represents, and is a member of, the Class and California Subclass.

35.     **Numerosity.** The potential members of the proposed class likely number at least in the thousands because of Staples sells millions of products nationwide under the AutoRestock program. Individual joinder of these persons is impracticable.  Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant, third parties, and vendors.

36.     **Existence and predominance of common questions of law and fact.** Plaintiff and all members of the proposed Class have been harmed by the acts of Defendant, including, but not limited to, being charged or paying undisclosed shipping fees.

37.     The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

38.     There are well defined and nearly identical questions of law and fact common to Plaintiff and members of the proposed Class. The questions of law and fact involving the Class claims predominate over questions which may affect individual members of the proposed Class. These common questions of law and fact include, but are not limited to, the following:

a.    whether Defendant systematically failed to disclose, or intentionally or knowingly concealed, that it would charge shipping fees for orders placed under the AutoRestock program;

b.    whether Defendant breached its contract with its customers by advertising one price, but then charging their credit cards a higher price;

c.    whether Defendant has been unjustly enriched by charged shipping fees that were not disclosed to customers;

d.    whether Defendant's charging of the shipping fees for orders placed under the AutoRestock program is misleading;

39.    **Typicality.** Plaintiff's claims are typical of the claims of the proposed Class members because they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories. Specifically, Plaintiff has been charged and paid a shipping fee for an order placed through the AutoRestock program, despite the possibility of the shipping fee having never been disclose to her. Plaintiff is a member of the proposed Class and Subclass and will fairly and adequately represent and protect the interests of the proposed Class as Plaintiff has no interests that conflict with any of the proposed Class members.

40.    **Adequacy of Representation.** Plaintiff is an adequate representative of the proposed Class because Plaintiff's interests do not conflict with the interests of the proposed Class, Plaintiff will fairly and adequately protect the interests of the proposed Class, and Plaintiff is represented by counsel skilled and experienced in class actions.

41.    **Superiority.** Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and

efficient adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant.

42.     A class action is the superior method for the fair and efficient adjudication of this controversy. The interests of individual members of the proposed Class in individually controlling the prosecution of separate claims against Defendant are small because the individual damages stemming from unlawfully charged shipping fees are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

43.     Defendant acted on grounds generally applicable to the proposed Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the proposed Class appropriate on a class-wide basis. Moreover, Plaintiff alleges Defendant's conduct complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Unjust Enrichment**

44.     Plaintiff repeats her prior allegations of this Complaint from paragraphs 1-43 and incorporates them by reference herein.

45.     Plaintiff brings this claim on behalf of herself and the members of the Class and Subclass under Massachusetts law.  In the alternative, Plaintiff brings this claim on behalf of herself and the members of the Subclass under California law.

46.     Plaintiff and the Class conferred a benefit on Defendant in the form of monies paid for shipping fees that were never disclosed.

47.     Defendant has knowledge of these benefits.

48.     Defendant voluntarily accepted and retained these benefits.  Defendant voluntarily retained the benefit of the shipping fees and the underlying transactions by enticing customers with purported discounts under the AutoRestock program, but then charging customers shipping fees and higher prices than what was represented prior to purchase.

49.     Because these benefits were obtained unlawfully, it would be unjust and inequitable for Defendant to retain them without paying the value thereof.

**SECOND CAUSE OF ACTION**
**Conversion**

50.     Plaintiff repeats her prior allegations of this Complaint from paragraphs 1-43 and incorporates them by reference herein.

51.     Plaintiff brings this claim on behalf of herself and the members of the Class and Subclass under Massachusetts law.  In the alternative, Plaintiff brings this claim on behalf of herself and the members of the Subclass under California law.

52.     Plaintiff and members of the Class have an ownership right to the monies paid for shipping fees.

53.     Defendant has wrongfully asserted dominion over the payments illegally diverted to Defendant in the form of shipping fees.  Defendant has done so every time that Plaintiff and members of the Class purchased an item through the AutoRestock program.

54.     As a direct and proximate cause of Defendant's conversion, Plaintiff and members of the Class suffered damages in the amounts of shipping fees paid after ordering an item through the AutoRestock program.

### THIRD CAUSE OF ACTION
**Breach of Contract**

55.     Plaintiff repeats her prior allegations of this Complaint from paragraphs 1-43 and incorporates them by reference herein.

56.     Plaintiff brings this claim on behalf of herself and the members of the Class and Subclass under Massachusetts law.   In the alternative, Plaintiff brings this claim on behalf of herself and the members of the Subclass under California law.

57.     Defendant entered into contracts with Plaintiff and members of the Class to sell products through its AutoRestock program for the prices listed prior to and at the point of purchase on Defendant's website.

58.     Plaintiff and members of the Class performed by paying the prices listed prior to and at the point of purchase on Defendant's website, as shown when checking out an item through the AutoRestock program.  Defendant breached these contracts by charging Plaintiffs and Class members a higher price than the parties had agreed to prior to and at the time of purchase through charging additional shipping fees that were not disclosed and not listed as part of the AutoRestock program prior to or at the time of purchase.

59.     Plaintiff and members of the Class have suffered an injury through the payment of more money than they bargained to pay under the contract.

### FOURTH CAUSE OF ACTION
**Fraud**

60.     Plaintiff repeats her prior allegations of this Complaint from paragraphs 1-43 and incorporates them by reference herein.

61. Plaintiff brings this claim on behalf of herself and the members of the Class and Subclass under Massachusetts law. In the alternative, Plaintiff brings this claim on behalf of herself and the members of the Subclass under California law.

62. Defendant failed to disclose material facts about purchases made through the AutoRestock program, including by failing to disclose the possibility (or the amount) of being charged shipping for purchases made through the program. These omissions were made with knowledge that the pricing information for the AutoRestock program was misleading and false.

63. Defendant also provided false pricing information for items sold through the AutoRestock program, representing that items cost a specified low price, only to then defraud customers by charging a higher price (by adding an undisclosed shipping fee) that was not disclosed prior to or at the time of sale. Defendant made these false pricing representations for the AutoRestock program with knowledge that they were false and misleading.

64. The omissions and false and misleading representations made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended and actually induced Plaintiff and Class members to make purchases through the AutoRestock program.

65. The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class and Subclass, prays for the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiff as representative of the classes;

C. Appointment of the undersigned counsel as counsel for the classes;

D.       A declaration that Defendant's actions complained of herein were unlawful;

E.       For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

F.       For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

G.       For prejudgment interest on all amounts awarded;

H.       For an order of restitution and all other forms of equitable monetary relief;

I.       For equitable or injunctive relief, including for restraining sales without truthful disclosures and pricing information, or as the Court may deem proper; and

J.       For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues so triable.

Dated: July 22, 2024                        Respectfully  submitted,

_/s/ Joel D. Smith_
Joel D. Smith (SBN 244902)
SMITH KRIVOSHEY, PC
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

Yeremey O. Krivoshey (SBN 295032)
(_pro hac vice_ motion forthcoming)
SMITH KRIVOSHEY, PC
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiff*
*and the Proposed Class and Subclass*